25-2502. Ms. Brill, good morning. We're moved to adjourn. Thank you all for joining us and we're going to start in a few moments. That the timing of the federal comparator is no later than the timing of the state predicate offense. First on the categorical approach, this is a well-established rule and we ask that it be faithfully applied. The government has proffered various other approaches that... They're suggesting it's similar to, correct? Yes, their formulations for similar to are slightly broader than or looser or another approach that has no contours, which is that more severe than can just have its own independent meaning. I don't think that that's supported by the statute and certainly not by every other. There's the word comparables in the statute. That has to mean something as we define whatever approach we're going to take, doesn't it? Yes, comparable means same or defined more narrowly, as the Supreme Court said in Mathis. It doesn't have to be an exact match. That's not the categorical approach. It has to be the same or more narrow then. Just to be clear, when you say the strict categorical approach, are you suggesting that we don't apply the hybrid approach, which as I understand, allows us to consider conduct for the purposes of determining whether or not it was committed against a minor? If this court wants to reach the question of the hybrid approach, which would be the Tier 2 inquiry, I do think that the statute does call for a hybrid approach in this court. Okay, I just want to make sure I understood what you were saying. For the Tier 3 inquiry, which is if first degree rape by forcible compulsion in New York is comparable to or more severe than aggravated sexual abuse or non-aggravated sexual abuse, I believe a strict categorical approach is the appropriate inquiry. What are the critical differences that you see in the two statutes? The critical differences between the New York statute and the federal aggravated sexual abuse is the degree of injury, physical injury versus serious bodily injury is a clear way that courts distinguish severity of harm. You're talking about 2241, right? Correct. What about 2242-1? 2242-1 is an issue that the government has just raised two days ago. It was never raised or briefed below, and I believe that argument was made. I thought that was raised below, and I'm pretty sure the government responded to it below as well. I was just looking back, and I believe that they were always discussing 2242-3, that subsection. Well, 2242-3 didn't exist. Correct. But the government's argument below and here is that 2243 is the relevant comparator because the timing is at the time that Mr. Summers committed the SORNA offense, which would be in 2024. So for the government, it always included 2242-3. It did not include it in the briefing. I submitted a 28-J response last night. I have not had time to fully brief it. My one response on the government's late argument and waived argument is that if force in non-aggravated sexual abuse was so broad, then they wouldn't have created 2242-3, that new subsection, which is supposed to be the catch-all. So that's my quick response to that. And so for those reasons, I think that a strict categorical approach is the appropriate approach. It's consistent with the statute and in every other circuit. And it calls for the court to find that Tier 1 is the appropriate inquiry. What do you make of the government's argument about Tier 2? So I do agree that this court should find hybrid approaches is appropriate. It was not raised below. And the problem with it not being raised below is that the government didn't prove it. What the government is relying on for this very significant finding that will also have lifetime consequences for Mr. Summers is the arrest report as recited in the PSR. That is the only proof in the record. I've never seen Mr. Summers' plea colloquy from New York. His plea colloquy in federal court said nothing about the age of a victim. His judgment, which I have seen, I'm not sure that the district court saw it, says nothing about the age of the victim. The statute that he was convicted under says nothing about the age of the victim. So I don't think that it would be appropriate for this court to find that Tier 2 is applicable at this stage of the briefing or even applicable to him based on the proofs. Counsel, when you get a chance, do you have the sentencing transcript with you? Will you take a look at, and you can do it when you're sitting down, when you prepare for reply. I want you to take a look at, I think it's JA 70-72, I could be wrong about that. But I thought that 22-42-1 was discussed there in the sentencing transcript. You can do it when you sit down, I just want you to take a look. So we didn't specifically speak about the timing, but regardless of how this court decides this case for Mr. Summers, I think the timing is very important for this court to consider. When a defendant pleads guilty to a sex offense in any court, federal or state, they think about the collateral consequences, the registration consequences. Mr. Summers, in this case, was specifically asked if he had consulted with his attorney about collateral consequences. To rule that a change in the statute, a change in the cross-reference to a statute could affect his original state plea seems an even stronger argument than the court had in Brown, that the timing has to be at the time of the state offense. And I would ask the court to look at, to make that decision regardless of how the decision goes for Mr. Summers. When you say the timing of the state offense, both the state, the underlying state predicate and the SORNA statute? The underlying state predicate and the SORNA statute, not the SORNA statute, the cross-reference to 2242. All right, at the time of the state offense. Yes, and I say that the timing should be no later than the state offense, but actually the Supreme Court in Brown was talking about the reference canon. The reference canon actually goes back to the timing of when the statute was enacted in 2006. That is actually the appropriate time to cross-reference 2242. If you have a statute, the reference canon that the Supreme Court discussed in Brown is if you have a statute specifically citing another statute, it's locked in time without any subsequent amendments. So I would ask the court to find that no later than the state predicate is the appropriate timing. But at the plea, wasn't he allocated on the fact that the district court was going to make decisions about sentencing consequences later and that no promises could be made to him about what the district court would decide? Yes. Wouldn't that cover the tiering part of this as opposed to the guidelines and collateral consequences that those are decisions for the district court to make and not something that is sort of bound up in a plea agreement or a guideline stipulation? Whether the district court has ultimate discretion to make those legal determinations and factual determinations, there's still a burden of proof on the government. No, I appreciate that, but you're making an argument. It sounds like sort of a reliance interest that the defendant at the time of the plea had an understanding about the collateral consequences and the tiering and the guidelines implications. And what I'm asking you is, or I guess just stating, isn't it true that those things were left to the district court's discretion and that he was made well aware of that at the time of the plea? Yes, that is all true. I'm sorry if I was not clear with my argument. The timing of the state plea, when his defense attorney was advising him of the SORNA consequences, of the life registration consequences, that would be something that a defense attorney would be obligated to advise a defendant of. But how could the attorney be providing any advice guaranteeing how a district court would apply the tiering? The attorney would be advising at the law at the time. The attorney would be saying, I think, I did a little of this. This is my best guess about how a district court would do it. Yes, agreed. Best guess by competent legal counsel is what a defendant is entitled to. The reliance point, I think, is tough. There is strong language in the Supreme Court cases you cite about the timing part of it. I think what's a little sticky is that those cases speak to the state law conviction and are not necessarily covering the federal law on the books at the time. And that's the extension you're asking us to make. Can you flesh out a little bit why that's appropriate? So McNeil has always held, the Supreme Court case has always held, that the state offense is stopped. We look at the state offense at the time the state offense was committed. But Brown did deal with the federal cross-reference to the Controlled Substance Act or Controlled Substance Regulations. It did deal with the same issue of a cross-reference to something in the federal codes and how that affects the court's determination of the risk factors from that original conviction. And so I think that Brown is exactly on point and stronger in this case. Did that answer the stickiness? It's a different statute, but I take your point. Do you want to talk a little bit about mootness? I'm drawing some inferences about the emphasis in your argument about your position there, but can you flesh it out for us? Mootness is on categorical or on...   You know, the government agrees that the issue of the cheering is not moot because it has lifelong consequences. The government said that it is just an issue of... What's your position on mootness with respect to the one point? My position on mootness with respect to the criminal history category issue? Great. How is that not moot? How is that not moot? On the specific facts of this case where Mr. Summers has a pending violation for this underlying conduct and then the two sentences are essentially intertwined because he's not able to proceed with his parole violation until he finishes the federal sentence. In that unique scenario, it's not speculative that his federal sentence and what he's serving will impact the parole board's decision and I am in frequent contact with the parole revocation defense unit in New York. Let's assume he's released in a few weeks, right?  Okay, is it moot then? It's not moot then. It's the same issue because he's going into New York custody to face the parole violation and he will be able to make the argument if he did over serve his time that that time should go to his parole violation for the same instant offense conduct. So it's like money in the bank. It's not money in the bank because he can't bank the time for later supervisory release violations. That doesn't preclude a finding of mootness. But in this case, he has interrelated crimes. For example, in federal court, if a defendant had a violation of supervised release on a state charge, we would wait for the state charge to play out to see what the appropriate federal supervisory release violation sentence is. And it's the same interrelation here. It's just going in a different direction. It has direct consequences for him, not collateral consequences, but direct consequences for that next proceeding. If the court does determine that it is not moot, I think that the Josie issue is, the issue that the court in Josie left open is well placed here for this court to determine. What about 3661? What about 3661? Can't the court consider pretty much anything at sentencing? The court can consider, yes. But the court is required to find under Josie when the instant offense conduct commenced. Well, the court, let me ask you this. Do you dispute the accuracy or the validity of the June 3rd, 2024 W-4 that shows New Jersey employment? No. I agree that the judge found that he filed a W-4 on June 3rd, indicating that his employer should send his tax withholdings back to that address. And the court relied on that in setting the date? Yes. What is the issue with that? The issue with that is that is not an appropriate, that's an erroneous finding of residency. How is it erroneous at the sentencing standard? He's asking, send my money or send my refunds or whatever it is. This is where I'm living. How is that erroneous? And can I layer something on top of that? As you're considering how it's erroneous, not from the perspective of the trial court, but from the perspective of our court and what our standard of review is when reviewing the trial court's determination. I believe that it is a hybrid standard of review because while she made the finding, the factual finding, which is clear that he filed a W-4 for employment purposes giving an address, the question of residency has a significance. And so this court should decide what residence is. And it is not giving an address for employment purposes. SORNA is worried about the community and protecting people in the community. SORNA is worried about people living in the community. It is not giving an address for employment purposes. And I would ask this court to think about residency. Again, regardless if this court finds that the factual finding was sufficient, I think that clear standards are very necessary in the SORNA context. And this is an example on both issues of a case where the clear standards prejudice Mr. Summers, both on criminal history and tiering. Thank you very much. Good morning, Mr. Sanders. Good morning. May it please the court, I'm Stephen G. Sanders. I'm from the United States Attorney's Office in New Jersey on behalf of the appellee. I have a lot of ground to cover. We're going to ask you to affirm, but I think there needs to be a remand under Rule 36 to correct the judgment because as I noted in my letter on mootness, the very condition of supervised release that we now agree prevents this case from being moot on the tiering issue is not reflected in the judgment. So I think under Rule 36 that needs to be corrected since the sentencing transcript controls over the written judgment. But with that, I'm going to address very quickly the mootness point and then move to the SORNA issue. The criminal history category issue is moot under this court's precedence and under Spencer v. Kemner. The fact that Mr. Summers would like to take an argument and use it somewhere else without any showing that it's likely that that argument is going to be considered, let alone have merit, is not sufficient to prevent this case from becoming moot. When does it become moot? When he's released? When he's released. So unless this court issues a decision, obviously within 14 days, which I don't know if we'll be able to do that, but I mean this appeal could have been expedited. That would have been one way to avoid this situation. It wasn't, so we're here. But the critical assumption of the it's not moot argument is that he over-served his sentence, but without a remand to the district court, we'll never know what that court would have imposed had it had a different guideline range. So unless you have any questions for me on mootness or on the residency issue, I would like to spend the bulk of my time talking about the SORNA issue. Sure. Is that all right? I'm in the odd position of recognizing that there are, I think, eight circuits out there that apply the categorical approach with this carve-out for a hybrid approach on the age, but that immediately proceed to the assumption that there's a strict categorical approach without really analyzing, as Judge Bowe said, the comparable to language. I'd like to point out this statute was passed in 2006, and that's a long time after Congress enacted ACCA and Congress had a chance to watch the Supreme Court develop the categorical approach in Taylor and apply it in Shepard and a series of cases. And if Congress wanted the same analysis to apply, they would have used the same terminology, right, is. Has any published case adopted the slightly broader approach? None has had to apply it. The Eighth Circuit has rejected it. The First Circuit, in an earlier opinion, which I cited in Morales, recognized the possibility of a slightly broader approach but didn't have to apply it in that case. What does that mean? If we're writing an opinion adopting that, what do we say that is? Well, I'll go to a case I give my Ms. Brill credit for citing in her brief, Port Nova, which is a decision of this court, right, that construed the words relating to, right, a state crime related to child pornography. And this court said that that called for a broader or a looser categorical approach because Congress hadn't used the same words it did in ACCA or that the commission did in the career offender provision. It didn't say is. So there's been no administratability problems with that standard. Here, it's hard to articulate that standard, but I can tell you when I look at the New York rape statute and I look at 2241A, the only difference, and it's not the level of injury cause, right, because this is not about causing injury. This is about a threat to cause injury. The only difference between those two statutes is that New York just requires a threat of physical injury. Congress in 2241A required a threat of serious bodily injury. Now, didn't New York amend its statute to remove the word serious? I'm not sure if New York subsequently amended the statute. I know we're focusing on the version and the definition that was in it. I'll represent to you that it did, that the prior version had serious and that it removed serious in the next set of amendments. So in our version, serious is not there. In the version just before, serious was there. Take that representation. Does that matter? Well, it does. And I mean, if it was in the version that was in effect, and I'll go back and check for sure, when Mr. Summers committed his crime and was convicted, then there's no difference between these. No, my position, what I'm representing to you is it was an aversion that existed before he committed his offense. The statute was amended. Serious was removed. And when he committed his offense, serious was no longer there. And let me finish my question. So you're arguing to us that there's no difference between the two. And I'm wondering if the fact that New York took serious out means anything. I think it just is a recognition that a rape offense where the rape occurs because there's a threat of some sort of bodily injury to either the rape victim or to some third party is the same thing. And then we're going to have juries quibbling over whether the level of the threat, where there is no actual injury cause, the jury's not deciding whether someone was injured. They're not going to have the jury quibbling over that. What matters is that the threat is the same thing as the other thing that the statute requires, which is forcible compulsion, either a threat of physical force or a threat to cause injury. But if we were to apply the traditional, old school, strict categorical approach, where do we land on this case? If you apply the strict categorical approach, I agree that. And I don't have to quote all the opinions that complain about the category. But I agree that the statute's overbroad and that we have to move to my alternative argument. And so I'll do that. But I do want to, again, just stress that comparable to, I quoted it in my brief Black's Law Dictionary, doesn't say it has to be equivalent. And I can't think of a more perfect case to make this argument when you compare 2241A and you compare the New York's definition of forcible compulsion, the only difference is in the degree of the threat. That, to me, is the quintessential case of something that's comparable to. And with that, I'll move to my- To the degree of the threat or degree of the injury? Well, remember, there doesn't have to be injury. It's just about when you're threatened to cause injury in order to induce the sex assault. It's just, are you threatening to kill somebody versus just threatening to hurt somebody? Again, serious versus bodily. Right. And to me, that is right in the heartland of what Congress was getting at. Now, let's move to 2242.3, which is the argument I made in my brief and the argument about Brown. It can't be that when Congress enacted SORNA and made a cross-reference to 2241 and 2242, it was freezing in place those definitions at the time SORNA was enacted, right? And we know that because in Brown, the Supreme Court didn't look at ACCA as of 1986. They said, we need to do some statutory construction, some analysis, and they ultimately pinned the date for purposes of that case on the date of the prior state drug offense. But SORNA is not a criminal statute. It is a civil statute meant to protect the public from sex offenders generally and meant to protect children specifically because there's a focus throughout the act on crimes against children. But couldn't you roughly frame ACCA that way as creating enhanced penalties to incapacitate somebody who's been a recidivist and been a threat to the community to protect the public by incarcerating them? I mean, at a high level of generality, you can, but those penalties, right, the consequences of having three strikes under ACCA are far more severe, right? You go from a zero to 15 to a 15 to 11. But I don't know that your argument turns on the severity of the outcome. No. In fact, I have better arguments than that. And one of them is that under SORNA, right, you did not have to commit your qualifying sex offense after SORNA was enacted in order to be a covered person. If you were a state offender, you have to travel in interstate commerce after the date SORNA was enacted. But if you were a federal defendant who had a sex offense conviction, you were obligated to register, right? And there's no retroactivity or ex post facto problem. We know that from Smith v. Doe, the Supreme Court case, and there's circuit-level precedent on that. So what I'm getting at here is that Mr. Summers, even if he was a Tier 1 or Tier 2 offender when he committed his sex assault offense, when Congress amended 2242 and added Subprovision 3, all it did was say, you're going to have to register for a longer period of time. They didn't create an obligation that didn't exist on him previously. They just made the consequences of his prior conviction more severe from a civil reporting consequence. If he fails to report, obviously he faces federal conviction if he travels in interstate commerce. But SORNA, the 2250s offense that he was convicted of here, that language hasn't changed and the penalty hasn't changed. So I want to also talk about the reference canon. I mean, I stumbled... The reference canon is an aid. As Ms. Brill mentioned, it's an aid in statutory construction, but the key features of the statute, right? The use of the present tense is comparable to, as described in, right? And especially when we have a U.S. code where everybody can look up. I understand the reference canon was developed at a time when statutes were in books, right? You couldn't go online, right? And they were just in the at-large written statutes. You couldn't know by looking at the statute when there was a cross-reference whether that cross-reference statute had been amended. But isn't there a present tense language in ACCA that the Supreme Court didn't find persuasive in the other line of cases that we're talking about? There was some, yes. I mean, it's in the opinion. They talk about it. That argument didn't carry the day. It didn't. So I struggle with... Because there's some intuitive appeal to what you're saying textually. I agree. But I read those opinions, and I don't see the way around that language. Well, all I can say is that the Supreme Court in Brown wasn't prescribing a one-size-fits-all, right? It wasn't saying any time you have a categorical approach and a need for a comparison, you always look at the law in effect on the date that the underlying crime was committed. It depends on the statutory scheme, its purpose, its structure. And I think all of those are the reasons I've seen in our brief point toward allowing an amendment to 2242, like to add that subsection 3, to be counted and cross-referenced in the definition of the tiering definitions. I have only three minutes left, so I'd like to talk a little bit about the tier 2 argument and why we don't think that there's a waiver there. And it's even more important now, right? If this case is effectively moot but for the tiering question, this appeal is effectively like a declaratory judgment action. It's as if Mr. Summers is seeking a federal court declaration of what his obligations are, right? So the tier 2 argument is not going to matter to the length of his sentence, but as he's putting it, it will dictate how long he has to register and how often. And so why should the fact that a prosecutor at a sentencing who made the winning argument, right, the tier 3 argument, didn't make the backup argument, the lesser included, that he's a tier 2, why should that give Mr. Summers an immunity, right? He's not just seeking a reduced sentence. He's trying to say that he's going to take the decision from this court, saying he's not a tier 3 offender, and act like he's a tier 1 offender. And he's going to be in for a rude awakening because if 15 years goes by and he doesn't register, we're going to prosecute him, right? Because if he's a tier 2 offender as a matter of law, he has a duty to register for 25 years. So at the very least, we think we haven't waived that. It's a purely legal issue, and contrary to what my friend Miss Brill said, it's in the PSR in two different places that the victim was 13 years old, and Mr. Summers didn't dispute that. And I can represent to the court also that I checked the New York State Sex Offender Registry, and the age of the victim is listed under the entry for Mr. Summers. This court can take judicial notice of public records. So that information is out there. How do you respond to your friend on the other side's position that the argument set forth in the papers two days ago is double forfeited, it wasn't raised below or here? Well, first of all, my apologies to this court for discovering that as I was preparing for argument. So I didn't raise it in my brief, and that's my bad. I strive to do better. It was raised below, and in preparing for argument, I recognize that I've checked the record. I think at page A81, I think Your Honor referenced several pages earlier where the defense attorney was trying to negate the argument. But at appendix page 81, the prosecutor, although she didn't make this argument in her written sentencing brief, argued on her feet in response that 2240-2-1, right, that the rape offense was categorically more severe for the very reasons I said. Is that enough to have preserved it? It's certainly enough to have preserved it, right, for appeal. And certainly if I had read that section of the transcript more carefully, I certainly would have briefed that because that, to me, is the easiest path to finding that Mr. Summers is a tier 3 offender. So it was raised below. I didn't raise it in my brief, and if the unfairness to my adversary is that she didn't have a sufficient chance to respond to it, then I would submit supplemental briefing as one option for the court. I see my time is up. Thank you very much. I'd ask you to affirm but to remain with your instructions to correct the judgment. Thank you. I apologize. I did not write down the appendix pages that you had asked me to look at. But I will say that the government made the argument below that slightly broader than was the relevant consideration, and they weren't saying that under the categorical approach 2242.1 was met. They were always espousing the slightly broader than, and I don't think that they preserved that argument. On the tier 2 issue, the government failed to meet its burden. Taking judicial notice now of something that a sex offender- Is it in the PSR? It is in the PSR. It just feels like on this argument and on the commencement of the fence argument, you're not putting much weight on the fact that this PSR went through an undisputed process under the Federal Rules of Criminal Procedure, factual disputes were resolved. This is a fact-finding document. I don't think we need to take judicial notice of anything if the age is in the PSR. Why can't we rely on that? On this specific issue, there was a discussion, there was an objection made to the district court that the court shouldn't include in the PSR just an arrest report because it wasn't reliable. The district court responded that it's appropriate to know the background of how the offense began. It was never more in the PSR or in the discussion- But that's a factual finding by the district court. That the arrest report said what it said. Yeah. It was never more than that at the district court level. And the reason that defense counsel- Is that enough? On arrest report, I believe that it's not enough under this court's case law. For other reasons, this court can't find a bare arrest report has significance for deciding criminality. And for this reason, that a finding of a sex offense against a 13-year-old would have a very significant consequence. And I would ask this court to find that that tier two generally requires more proof. For example, in Nihuan, which this court decided and the Supreme Court affirmed, the issue of the factual, the hybrid approach which was raised at the district court level. It was a immigration case where the government had to prove more than $10,000 for the fraud-mated and aggravated offense. The government, the defendant stipulated that the offense involved more than $10,000 and the restitution order followed that stipulation. That is reliable facts. In this case, if Mr. Summers had known that the arrest report written in the PSR would have this kind of consequence for tiering purposes, he would have had a better objection to the district court for taking it out. It was only discussed in terms of how the Bureau of Prisons would look at the bare arrest report in determining different risk factors once he was in prison. It was never intended to be a factual finding. So it is true that the PSR is a document for those reasons. It's a document that contains the sentencing fact findings of the district court without regard to purpose. I'm not following that. If this court is to find that everything in the PSR that isn't stricken has these kind of long-standing consequences that could affect tiering, then defense attorneys would have to practice differently. Maybe they should. I don't understand why we would be looking at things printed in this document that survived an unchallenged process and disregarding them based on the consequences of the district court's fact findings. Because the defense attorney did not know that this piece of the arrest report would be used for fact finding for tiering purpose that would affect him for 25 years. That's a consequence that I don't know that probation officers are making that finding. They're frequently using arrest reports. But every factual determination in a pre-sentence report has real serious consequences. I would say that this consequence is the most serious because it has consequences for his safety in prison. It has consequences for his safety in the community. It might have consequences for how New Jersey is going to tier him under Megan's law. And notwithstanding all that, there was no objection? There was an objection. Challenging the age of the victim? No. Defense counsel did not challenge the age of the victim because it was never suggested that a hybrid approach would be the appropriate standard. If that was raised in the district court, it would have proceeded very differently. And I assume that the government would have put in different proof. I don't know. I haven't seen it. I haven't seen the New York parole sex offender registry website on that point. But I also haven't seen the plea colloquy. I believe that the tiering, the hybrid approach, requires more reliable proof than recitation of an arrest report. You agree with your friend on the other side that we need to remand this to correct the judgment? Yes. Thank you. So I would ask this court to find that neither issue is moot and to remand quickly if the court is going to decide in Mr. Summers' favor so that he could get the benefit of a reduced guideline sentence based on a reduced sentencing range. Thank you. Thank you. Thank you, counsel. We appreciate your arguments and your briefs. We'll circle back to you in the not-too-distant future.